AYRES, Judge.
This is an action for a declaratory judgment wherein plaintiffs, 20 in number, owners of property abutting St. Vincent Avenue between 70th and 84th Streets, in the City of Shreveport, contend that their properties abutting said avenue are not sub j ect to local and special assessments for the widening and improving of said avenue, and that the plan and proposed action of the defendant, City of Shreveport, for that purpose is illegal, null, and void.
Plaintiffs urge, in support of their demands, that (1) no notice, by resolution or otherwise, was given of defendant’s intention to widen the aforesaid segment of St. Vincent Avenue; (2) a bond issue for $9,873,000, approved by the taxpayers in an election held September 11, 1962, for the purchase of Slack Industrial Park, and for the construction of an industrial plant on a portion thereof, contemplated an expenditure of funds therefrom to widen and improve the aforesaid avenue which leads to said park; (3) the necessity for the improvement of the avenue arose from the construction of the industrial plant; (4) that plaintiffs’ properties were damaged,, for which they received no compensation; and (5) defendant is estopped from levying special assessments against plaintiffs’ properties for the cost of the aforesaid project.
The position of the defendant was that the proceedings for the improvement of the aforesaid avenue complied with the provisions of the applicable laws, and, moreover, that the improvement was not only in the interest of plaintiffs but of the public in general.
From an adverse judgment, plaintiffs prosecute this appeal.
The first of plaintiffs’ contentions is in reality not that no notice of the proposed improvement was given but that the notice as given in the resolution authorizing the proceedings was insufficient.
We may first point out that the contemplated improvement was undertaken pursuant to the provisions of LSA-R.S. 33:3301-3319. There it is provided that municipalities may construct, pave, surface, resurface, and repair or otherwise improve streets, roads, sidewalks, and alleys, together with the necessary ditching, curbing, guttering, aprons, drains, and headers, and levy and collect local or special assessments on the real property abutting the improvements sufficient in amount to defray the total cost of such improvements. LSA-R.S. 33:3301.
Section 3302 of the statute provides that any municipality undertaking any of the aforesaid improvements
“ * * * shall adopt a resolution giving notice of its intention to make the proposed improvements, which notice shall contain a general description of *913 the improvements contemplated, the manner of paying for them, and shall state whether the improvements shall be constructed under private contract or undertaken by the municipality.” (Emphasis supplied.)
The notice of the contemplated improvement contained in the resolution adopted by defendant’s governing authority and as herein concerned recites that the “work to be performed contemplates grading, concrete paving, concrete curbing, gutter, sidewalks, storm sewer, and pipe drainage.” The basis of plaintiffs’ contention that the notice was insufficient is that no reference was made to a widening of the street.
The record establishes that, during the 1930’s, St. Vincent Avenue was paved, in a width of approximately 20 feet. This was a W.P.A. project completed without cost to the owners of the abutting property. This pavement, where possible, was utilized in the new construction wherein the width of the concrete surface of the street was increased to 36^11 feet. This procedure reduced the cost of the project resulting in a saving not only to the abutting property owners but to the City as well. The cost was prorated i/j to the City and Yz against the abutting property, that is, Yz to the property on each side of the street. Accordingly, an assessment was levied against the abutting property at the rate of $7 per lineal foot.
Although the word “widen” is not used in the statute to which reference has already been made, we are of the opinion that the general description of the contemplated improvement constitutes a substantial compliance with the statute as to the requirement of notice. The grant of authority to levy special assessments for widening of the pavement on a street is implicit in the authority to levy such assessments for constructing, paving, surfacing, resurfacing, and repairing or otherwise improving the streets. To adopt a contrary view would mean that, once a municipality exercised its power to construct and pave a street of a determined width, the municipality would have exhausted its authority as to the selection of the width of the paved portion of a street and would thereafter be limited to repairing and repaving the width originally constructed. This, it appears, would be an unreasonably narrow interpretation of the language of the statute. Under a comparable, factual situation, and under similar statutory provisions, an identical conclusion was reached by the Supreme Court of Florida in Anderson v. City of North Miami, Fla., 99 So.2d 861, 864 (1957).
While a rule is generally recognized in the jurisprudence to the effect that statutes conferring upon municipalities the authority to levy local or special assessments, such as the one under which the defendant, City of Shreveport, is now proceeding, are in' derogation of common right and, therefore, as a general proposition, are to be accorded a strict construction, and that a failure to comply with the requirements thereof, which are sacramental, is fatal to the validity of the acts of the municipality, the further principle is also well established that, where such a statute is substantially followed, mere informalities and irregularities in the procedures employed by the municipality in an attempt to comply with its requirements do not necessarily render the proceedings null and void. Bell v. City of Shreveport, 234 La. 607, 100 So.2d 883 (1958).
There was, for the aforesaid reasons, at least a substantial compliance with the provisions of the statute as to the requirement of notice.
We find no sound basis for a conclusion that St. Vincent Avenue was to be improved by the expenditure of funds from the bond issue concerned with the purchase of Slack Industrial Park and the construction of an industrial plant thereon. Nowhere in the proceedings has it been pointed out, and we find none, that funds derived' from that bond issue might be used for *914 paving the aforesaid street. Though only $9,200,000 of the authorized bonds were issued and sold, which appear to have been all that were necessary for the purpose for which they were voted, and there remained $673,000 which could have been funded into bonds and sold, no authority was shown for their issuance and sale to provide funds for the paving of this street.
As to the third of plaintiffs’ contentions, we think it may be fairly concluded that, while the paving of St. Vincent Avenue had been considered for some time, the purchase of the industrial park and the construction of an industrial plant thereon prompted its early improvement. Nevertheless, this fact does not have any material bearing upon the legality of the special assessments proposed against plaintiffs’ properties for the improvement of the street.
Nor does the record establish that plaintiffs have sustained damages to their properties by reason of the improvement. Contrary to plaintiffs’ contention, the street was not widened; the boundaries remained the same; only the paved or traveled portion of the street was increased in width. The new construction was entirely on the right of way, long existing in the public. That plaintiffs may have constructed their residences or other improvements too near the property boundaries, and now find them inconveniently located, is a matter with which the City could not be held responsible. The future use of the right of way by the City should have been anticipated.
Nor does the evidence warrant a conclusion that plaintiffs’ properties have been damaged through defendant’s fault. That some inconvenience developed in readjustment to the improvements may be conceded. However, such inconvenience cannot be charged, under the aforesaid facts and circumstances, to any fault on the part of the defendant in doing, in a lawful manner, that which it was fully authorized to do-
Finally, for consideration is plaintiffs’ plea of estoppel wherein it is contended that defendant is estopped from denying that the purchase and improvement of Slack Industrial Park and its lease is a proprietary project; that the improvement of St. Vincent Avenue between 70th and 84th Streets was a necessary part of that project; that the bond issue, authorized for the purchase and improvement of the industrial park, included the cost of widening and improving St. Vincent Avenue, and that, therefore, the properties of plaintiffs abutting St. Vincent Avenue should not be liable for and specially assessed with any part of the cost of the street improvement project.
In view of the conclusion reached as to the disposition of this plea, we will preter-mit any discussion of the propriety of its filing or of its application to defendant, a municipality.
There was, as we have heretofore pointed out, no reference, directly or indirectly, to the improvement of St. Vincent Avenue in the proceedings authorizing the bond issue in connection with the purchase and improvement of the industrial park. Plaintiffs, therefore, rely upon alleged representations and assertions made by defendant’s mayor and commissioner of public works during the promotion of the bond issue to the effect that the cost of widening the avenue would be paid from the proceeds of the sale of the aforesaid bonds. Accordingly, it is contended that it would now be inequitable and unjust to levy assessments against plaintiffs’ properties.
It suffices to say that plaintiffs have not established a factual basis for this plea. No direct proof was offered that defendant’s officials represented that the street would be paved from funds to be realized from the bond issue. Plaintiffs, no doubt, labored under the impression they would be relieved of the cost of the improvement of the street. They could, however, point to no assertion made by the officials upon which such a conclusion or impression could *915 have been founded. To the contrary, the officials were most positive that they made no such representations.
Nor does a news item in a local newspaper, published immediately prior to the election on the bond issue, upon which plaintiffs relied, justify their position. In this report it was recited that the Commissioner of Public Works described, as one of the most essential projects, the paving of St. Vincent Avenue beginning at 70th Street and continuing to the industrial park; that the street would be widened to 36-41 feet, depending upon available right of way, with an estimate of $415,000 as the City’s share of the cost. The item noted that the balance of the cost would be paid from assessments on the abutting properties.
Nor do we consider it material that, in a proposal submitted to the taxpayers of the City on June 6, 1963, in the issuance of bonds for certain improvements, $415,000 was allotted for the paving of St. Vincent Avenue — $270,000 for one segment and $145,000 for the other — inasmuch as this was a method of providing the City’s portion of the cost of the improvement under a policy providing for the City’s participation in the cost of such improvements. This policy was adhered to despite the fact that, under the statute, as herein observed, the entire cost could have been assessed against the abutting properties.
With reference to plaintiffs’ complaint that the improvement of this street will result in no benefit to them, it would appear appropriate to point out that such a contention is without merit. For instance, it was said in Kelly v. Chadwick, 104 La. 719, 29 So. 295, 300 (1901):
“ * * * The work is done for the benefit of the local public. The assessment for its payment is levied upon the abutting lots not because of any special benefit their owners derive from the improvement, but because this local public good demands it, and the law authorizes special taxation for such purpose. * * * It is true that in some instances almost the whole benefit accrues to a few, but there can be no universal rule of justice upon which such assessments can be made. An apportionment of the cost that would be just in one case would be oppressive in another. For this reason the power to determine when a special assessment shall be made, and on what basis it shall be apportioned, vests in the legislature, or some political body to which it has delegated that authority. Referring to the subject, Cooley, in his work on Taxation (page 429), says: ‘The matter is wisely confided to the legislature, and could not, without the introduction of some new principle in representative government, be placed elsewhere. With the wisdom or unwisdom of special assessments, when ordered in cases in which they are admissible, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the case beyond the just limits of legislative discretion.’ ‘The subject of taxing districts,’ says Cooley (page 449), ‘belongs to the legislature. So much is unquestionable. The authority may be exercised directly, or in the case of local taxes it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be as conclusive as if taken by the legislature itself. It has been repeatedly decided that the legislative act of assessing districts for special taxation on the basis of benefits cannot be attacked on the ground of error of judgment regarding the special benefits, and defeated by satisfying a court that no special and peculiar benefits are received. If the legislature has fixed the district, and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, that is conclusive; and so, when the legislature has adopted its method and standard of distributing the cost, as constituting, in its judgment, an *916 apportionment in proportion to the benefits as nearly as is reasonably practicable, the judiciary should not be called on to interfere.’ ”
See, also, City of Shreveport v. Shreveport Traction Co., 134 La. 568, 64 So. 414, 415 (1914), wherein it was said:
“The question of the right of an abutting proprietor to contest a local assessment for paving on the ground of inequality or lack of benefit to the property has been settled adversely to the contention of the present defendant by the decision in Kelly v. Chadwick, 104 La. 719, 29 South. 295 (affirmed by the Supreme Court of the United States in 187 U.S. 540, 23 Sup.Ct. 175, 47 L.Ed. 293), and other decisions of this court and of the Supreme Court of the United States affirming the doctrine there enunciated.”
To the same effect is a statement of the general rule appearing in 43 Am.Jur., “Public Securities and Obligations,” § 80, page 336:
“The motives which induce voters to authorize the issuance of municipal bonds cannot be inquired into by the courts, when the propriety of becoming indebted for the purpose for which such bonds are issued has been committed to such voters by the legislature of the state.
“Bonds issued under the authority of a popular election cannot be set aside simply because all that may have been said in public speeches during the canvass which preceded the election does not prove true; and official misinformation given to electors in advance of a vote upon a proposition for the municipal acquisition or ownership of a utility system, and the issuance of bonds for that purpose, cannot vitiate an election held in substantial compliance with the law, at least where no complaint regarding such misinformation is made before the election.”
For the reasons assigned, we fmd no sound basis for sustaining the plea of estop-pel; nor do we find manifest error in the judgment appealed. Hence, the plea of es-toppel is overruled and the judgment appealed is affirmed at plaintiffs-appellants’ cost.
Plea of estoppel overruled; judgment affirmed.